IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK11-80717-TJM |
| | ) | |
| RONNIE E. SWIFT, | ) | |
| | ) | CH. 11 |
| | ) | |
| Debtor(s). | ) | |

ORDER

Hearing was held in Omaha, Nebraska, on October 9, 2012, regarding Fil. #143, Chapter 11 Plan, filed by the debtor and various objections. David Hicks appeared for the debtor, Ed Brink appeared for The Bank of New York Mellon Trust Co. N.A., Richard Beheler appeared for U.S. Bank National Association, and Michael Whaley appeared for Donna Rothlisberger as Trustee of the Donna Rothlisberger Revocable Trust.

The debtor filed an individual Chapter 11 case. He proposed a Chapter 11 plan, Fil. #143. The plan drew objections from creditor U.S. Bank National Association, as trustee, on behalf of the holders of the Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-3, c/o Select Portfolio Servicing, Inc., hereinafter referred to as Select Portfolio, Fil. #191; U.S. Bank National Association as trustee successor in interest to Wachovia Bank, N.A. as trustee for Chase Funding Loan Acquisition Trust (Chase CFLAT 2004-AQ1 2004-AQ1), hereinafter referred to as U.S. Bank, Fil. #192; The Bank of New York Mellon Trust Company, National Association, f/k/a The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., as Trustee, by GMAC Mortgage, L.L.C., hereinafter referred to as GMAC, Fils. #195 and #197; and Donna Rothlisberger as Trustee of the Donna Rothlisberger Revocable Trust. The Rothlisberger objection was settled on the record at the hearing on the objections.

Select Portfolio holds a note signed only by the debtor's spouse. The note is secured by a deed of trust executed by both the debtor and his spouse and the real estate in question is owned by the debtor and his spouse as joint tenants with rights of survivorship. The note principal balance on the petition date was less than the value of the property. The Select Portfolio claim is dealt with in Class 10 of the plan. That class does not specifically identify the Select Portfolio claim, but includes it with other allowed secured claims which are not specifically identified by the claim holder.

The treatment of the claims in Class 10 is such that principal balances will be paid, together with simple annual interest is at the rate of 5.50% amortized over a 30-year period of time. The debtor proposes that he will be responsible for taxes and insurance on the property and there will be no escrow.

In Article X, paragraph 5 of the plan, the debtor provides: "Moreover, so long as the Plan is in effect, and Debtor is not in material default, any party jointly obligated with debtor shall benefit by the stay and shall remain protected."

Select Portfolio objects for a number of reasons. First, the proposal to pay principal plus simple interest on the over-secured claim does not give Select Portfolio the right to collect attorney fees and other costs up to the value of the collateral as provided in 11 U.S.C. § 506(b). Select Portfolio objects that its claim has been placed in Class 10 with others which are not similar in

violation of § 1122(a). Such treatment violates a good faith requirement of § 1129(a)(3) because it deprives Select Portfolio of its right to vote as a class, and deprives it of its contractual rights.

Select Portfolio further argues that since the debtor is not a party to the note, he has no ability to modify the note.

Select Portfolio further objects that there is no authority in the Bankruptcy Code or case law which permits a stay to be imposed on actions to be taken against a non-debtor obligor. The stay provision deprives the creditor of its contractual right to proceed against the debtor's spouse, the person who actually executed the note.

Finally, Select Portfolio objects that, pursuant to the plan, the debtor is allowed to keep his property in violation of the absolute priority rule.

U.S. Bank objects to the plan, first because the property which is its collateral is the homestead of the debtor and his spouse. Under § 1129(b)(5), the debtor is prohibited from modifying the note. Nevertheless, the debtor has failed to make seven post-petition payments and the bank believes no plan should be confirmed until the post-petition delinquencies are cured. Additionally, the contract between the bank and the debtor and his spouse provides for pre-petition attorney fees incurred through collection efforts and the plan totally ignores that obligation, thereby modifying the contract. Finally, U.S. Bank suggests that an inability to make post-petition payments on this note indicates a lack of feasibility.

GMAC holds a note with a principal balance of $61,387.00 as of March 2011, and a payoff of $73,297.00 as of the date of the hearing. The value of the real estate securing the note is $65,000.00. The plan proposes to pay only the principal and not pay any amounts accruing above the principal up to the value of $65,000.00. GMAC also objects to being placed in Class 10 with other secured claims. It also asserts that providing for a stay of any actions against the debtor's spouse, a co-signer on the debt, is bad faith (Fil. #195).

GMAC, at Fil. #197, objects that the plan proposes to extend the term of the promissory note for 30 years beyond the last payment date of November 1, 2032. It also objects to that provision in the plan that the debtor will be responsible for taxes and insurance because, on this particular note, there is private mortgage insurance ("PMI") and if the debtor does not have his own PMI policy, the creditor would need to escrow the account in order to adequately protect the parties' interest.

GMAC also objects that since the debtor's spouse is obligated on the note and the deed of trust and has not filed a bankruptcy case, confirmation of the plan modifying the note would also modify GMAC's ability to enforce its rights against the non-debtor spouse and, therefore, such plan is not proposed in good faith.

Finally, GMAC objects to the stay prohibiting actions against the non-debtor obligor.

With regard to Fil. #195, the GMAC initial objection, counsel for the debtor agreed at the hearing that the debtor would pay up to the full value of the collateral, $65,000.00. He also pointed out that the plan does not extend the term of the note for 30 years, but only extends it for 10 years beyond the original final payment date. He further stated that with regard to both GMAC objections and the U.S. Bank and Select Portfolio objections concerning the imposition of a stay prohibiting

an action against the spouse of the debtor on her individual contractual obligations, the stay provision (¶ 5) is limited by its plain language, which is:

> Moreover, so long as this Plan is in effect, and Debtor is not in material default, any party jointly obligated with debtor shall benefit by the stay and shall remain protected. . . .  For purposes of this paragraph only, the Plan is in effect until the Debtor is dismissed or discharged in this case.

With regard to U.S. Bank's objection concerning the post-petition delinquency, the debtor has offered to make the regular monthly payment and one-half of the monthly payment for as many months as necessary to cure the delinquency.

Concerning Select Portfolio's position that because the debtor is not on the note, he is not permitted under the statute or case law to modify the note, counsel pointed out that the United States Supreme Court in Johnson v. Home State Bank, 501 U.S. 78 (1991), held that a debtor without personal liability to a creditor could nonetheless provide for the treatment of such creditor's in rem claim in a Chapter 13 case. He suggests such a rule should apply in Chapter 11 just as in Chapter 13, thereby permitting the modification in this particular case.

The ballot summary is in evidence. It shows that out of the 13 classes, only one class, Class 11, which consists of any and all allowed secured claims wherein the collateral is something other than or in addition to real estate, voted to accept the plan. Those claims specifically include, but are not necessarily limited to, any allowed secured claim of Nebraska Furniture Mart and any allowed secured claim of the Internal Revenue Service based on one or more tax liens. The schedules at Fil. #12 show Nebraska Furniture Mart as being owed $4,080.00 on the petition date, the exact amount shown as accepting the plan. The total amount of secured claims shown in the various classes in addition to Class 11 equals almost $500,000.00 in classes that voted and specifically rejected the plan. Since no other class accepts the plan, it appears that the plan is not proposed in good faith as required by § 1129(a)(3). The inquiry into good faith looks at the debtor's fairness in dealing with creditors. Cutcliff v. Reuter (In re Reuter), 427 B.R. 727, 770 (Bankr. W.D. Mo. 2010). The great difference between the total dollar value of the one impaired class accepting the plan versus the total dollar amount of the rejecting classes does not support confirmation of this plan. Lumber Exch. Bldg. Ltd. P'ship v. Mut. Life Ins. Co. (In re Lumber Exch. Bldg. Ltd. P'ship), 134 B.R. 354, 358 (D. Minn. 1991) (holding that a plan proposing cramdown by a class representing just two percent of total claims  was not fair and equitable).

Putting two or more secured claims in Class 10 is improper. Each secured creditor has rights and collateral that are substantially different from one another. Placing them together violates § 1122.

> [A]s a general rule each holder of an allowed claim secured by a security interest in specific property of the debtor should be placed in a separate class. There are, however, exceptions to this rule, permitting the grouping of different secured claims in one class when there is a reasonable basis for doing so, such as when purchase-money mortgages on different parcels of real property are placed in the same class based on the location of the property, or when several claims are secured by a common interest in the same collateral.

7 Collier on Bankruptcy ¶ 1122.03(3)(c).

There is no authority in the Bankruptcy Code or the case law that allows a Chapter 11 individual debtor to protect a non-debtor co-obligor from creditor actions to collect on the debt from the co-obligor through state law procedures.

The debtor is not current on his post-petition obligations concerning his homestead. Not only does that raise feasibility issues, but it simply does not conform to the statutory obligation of 11 U.S.C. § 1129(b)(5) which prohibits modification of that type of obligation. In addition, the plan ignores contractual obligation on the homestead note to provide for pre-petition attorney fees for the creditor.

There is no evidence of feasibility of the plan. Apparently, no payments have been made on the non-homestead notes since the petition date and there is no evidence that the debtor has the ability to make any such payments.

<u>Johnson v. Homestead Bank</u> permitted a Chapter 13 debtor who had no legal obligation on a note because of his prior Chapter 7 discharge to cure the delinquency on the note based upon his equitable rights as an obligor on a deed of trust securing the note. Here, the debtor has provided no case law applying such a precedent to a Chapter 11 case wherein the plan not only proposes to cure the delinquency but to modify the terms of each note in a significant way, including the term of the note, the interest rate and the payment of principal, not including § 506 fees and costs up to the value of the collateral. Such treatment of secured claims in this case is significantly different from the <u>Johnson v. Homestead Bank</u> case and such treatment of the note signed only by the debtor's spouse is not allowed.

Although it is not absolutely necessary for the determination of non-confirmability of this plan, since Select Portfolio raised the issue of the absolute priority rule, a comment is appropriate. Select Portfolio is an over-secured creditor. The absolute priority rule is a tool which only unsecured creditors may use to protect their interest in obtaining payment. Secured creditors do not have standing to assert the absolute priority rule. <u>Norwest Bank Worthington v. Ahlers</u>, 485 U.S. 197, 206-07 (1988) (interpreting the absolute priority rule to be applicable to unsecured creditors); <u>Corestates Bank, N.A. v. United Chem. Techs, Inc.</u>, 202 B.R. 33, 54 (E.D. Penn. 1996) ("Courts limit their application of the absolute priority rule to unsecured creditors."); <u>In re Cypresswood Land Partners</u>, 409 B.R. 396, 419 (Bankr. S.D. Tex. 2009) ("[A plan] objection may only be prosecuted by the holder of an unsecured claim."); <u>In re New Midland Plaza Assocs.</u>, 247 B.R. 877, 893 (Bankr. S.D. Fla. 2000) ("As a fully secured creditor . . . [the objecting party] . . . does not have standing to assert the absolute priority rule of § 1129(b)(2)(B)(ii)"); <u>In re Applied Safety, Inc.</u>, 200 B.R. 576, 588, (Bankr. E.D. Pa. 1996) ("The absolute priority rule applies to only unsecured claims.").

IT IS ORDERED that, for all of the above reasons, this plan, Fil. #143, is denied confirmation.

DATED:    November 1, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *David Hicks
    Ed Brink
    Richard Beheler
    Michael Whaley
    United States Trustee

*Movant is responsible for giving notice of this order to other parties if required by rule or statute.